UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 2:19-cr-207-GZS |
| v. | |
| THELL BROWN, DEFENDANT | |

### Defendant Thell Brown's Motion to Suppress All Evidence Derived from a Traffic Stop on June 5, 2019

### Background

At 3:10 p.m. on June 5, 2019, while travelling northbound on Interstate 95, Maine State Police Trooper John Darcy drove in the far-left lane and past two vehicles which were bunched together in the middle lane. Trooper Darcy sped past those vehicles, remained in the left-hand lane and observed, for at least 30 seconds, a passenger car driven by Thell Brown. Mr. Brown was in the middle lane and was not speeding. Trooper Darcy arbitrarily decided that Thell Brown was following too closely[1] behind the vehicle ahead of him and initiated a traffic stop.

After the vehicle stop, police seized Mr. Brown and his passenger. Law enforcement then learned that Mr. Brown had an active warrant for his arrest. Searches of Mr. Brown's person incident to and after his arrest yielded approximately 24 grams of crack cocaine and two (2) Oxycodone Hydrochloride 5 mg pills.

The United States Government secured a grand jury Indictment charging Thell Brown with Possession with Intent to Distribute Cocaine Base.

---

[1] An ostensible violation of Title 29-A Maine Revised Statutes §2066.

**Argument**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures …" U.S. Const. Amend. IV.  "An officer can stop a car if he sees a driver commit a traffic offense, even if the stop is just an excuse to investigate something else." *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011), *quoting Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.")  A seizure unsupported by probable cause (or reasonable suspicion) fails to withstand Fourth Amendment analytical scrutiny.

In *United States v. Woodrum*, 202 F.3d 1, 2000 U.S. App. LEXIS 880, the First Circuit described the scrutiny:

> It is doctrinal bedrock that a police stop of a moving vehicle constitutes a seizure of the vehicle's occupants and therefore comes within the purview of the *Fourth Amendment*. See *Whren v. United States, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996)*; *United States v. Hensley, 469 U.S. 221, 226, 83 L. Ed. 2d 604, 105 S. Ct. 675 (1985)*.  This principle applies equally to drivers and passengers. See *United States v. Sowers, 136 F.3d 24, 27 (1st Cir. 1998)*; see also *Whren, 517 U.S. at 819* (evaluating a passenger's challenge to a traffic stop along with the driver's). Hence, each occupant of a car has a right to challenge the propriety of a traffic stop under the *Fourth Amendment*. Although courts occasionally use the term "standing" as a shorthand for this status, the real implication is that the individual's *Fourth Amendment* interests were affected by official actions. See *Rakas v. Illinois, 439 U.S. 128, 138-39, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978)*; *United States v. Sanchez, 943 F.2d 110, 113 n.1 (1st Cir. 1991)*. The primary interests that the *Fourth Amendment* protects in this type of situation include an interest in freedom of movement and a concomitant interest in being insulated from the fear and anxiety that frequently accompany a sudden, unexplained stop. These interests "are personal to all occupants of the vehicle." *United States v. Kimball, 25 F.3d 1, 5 (1st Cir. 1994)*.

A decade earlier the First Circuit put forth the following "reasonable suspicion for a traffic stop" analysis in *United States v. Chhien*, 266 F.3d 1, 2001 U.S. App. LEXIS 20881:

> Reasonable suspicion, as the term implies, requires more than a naked hunch that a particular person may be engaged in some illicit activity. *United States v. Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989)*. By the same token, however, reasonable suspicion does not require either probable cause or evidence of a direct connection linking the suspect to the suspected crime. *United States v. Cortez, 449 U.S. 411, 417-18, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981)*; *United States v. Velez-Saldana, 252 F.3d 49, 52 (1st Cir. 2001)*. Reasonable suspicion, then, is an intermediate standard -- and one that defies precise definition. Its existence must be determined case by case, and that determination entails broad-based consideration of all the attendant circumstances. *Florida v. Royer, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983)*. In mulling those circumstances, an inquiring court must balance "the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Sowers, 136 F.3d at 27* (quoting *United States v. Hensley, 469 U.S. 221, 228, 83 L. Ed. 2d 604, 105 S. Ct. 675 (1985))*. To keep this balance true, the court must make a practical, commonsense judgment based on the idiosyncrasies of the case at hand. *Ornelas v. United States, 517 U.S. 690, 695-96, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996)*.
>
> To work the calculus of reasonable suspicion in the context of a traffic stop, an inquiring court must ask whether the officer's actions were justified at their inception, and if so, whether the officer's subsequent actions were fairly responsive to the emerging tableau -- the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed. *Sowers, 136 F.3d at 27*. Formulating the answers to these queries demands a margin of flexibility. After all, while an officer's actions must bear some relation to the purpose of the original stop, he may shift his focus and increase the scope of his investigation by degrees if his suspicions mount during the course of the detention. *Id.*; *see also Terry v. Ohio, 392 U.S. 1, 10, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)*

Thell Brown contends that Trooper Darcy arbitrarily concluded that he committed a traffic infraction. Stopping Brown's car essentially based on a guess or hunch fails to meet the threshold of Fourth Amendment legitimacy. Thell Brown

petitions this Honorable Court to suppress all evidence derived from this unconstitutional traffic stop.

Dated at Biddeford, Maine, this 6th day of January 2020.

/s/ Joseph S. Mekonis
Attorney for T. Brown

Joseph S. Mekonis (Bar No. 8947)

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

## CERTIFICATE OF SERVICE

I, Joseph Mekonis, Attorney for Thell Brown, hereby certify that I electronically filed the foregoing Motion to Suppress All Evidence Derived from a Traffic Stop on June 5, 2019 with the Clerk of Court and AUSA Meghan Connelly via the ECF system.

Date:  6 January 2020          /s/ Joseph Stanley Mekonis
                               JOSEPH S. MEKONIS (Bar No. 8947)
                               Law Office of Joseph Mekonis, P.A.
                               P.O. Box 679
                               Saco  ME  04072
                               (207) 283-6610